UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL GOODRICH,

                    Plaintiff,

            v.                                            Case No. 15-cv-00899 (CRC)

ADTRAV TRAVEL MANAGEMENT,
INC.,

                    Defendants.

## OPINION AND ORDER

Plaintiff Michael Goodrich was fired after working just five months as a "virtual agent"

for Defendant ADTRAV Travel Management, Inc. ("ADTRAV").  Goodrich filed a complaint in

this Court, alleging that his termination violated the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12101 *et seq.*  As a condition of his employment, Goodrich had signed an

agreement that would have routed precisely this sort of claim to an alternative dispute resolution

program rather than litigation in state or federal court.  ADTRAV has accordingly moved to

compel arbitration under this agreement and stay the complaint.  Goodrich resists enforcement of

the arbitration agreement on the grounds that it is both procedurally and substantively

unconscionable.  Finding that the agreement is not unconscionable, the Court will grant

ADTRAV's motion.

**I.      Background**

ADTRAV employed Michael Goodrich as a travel agent from September 7, 2013, until

February 10, 2014.  Compl. ¶¶ 5–6.[1]  Although ADTRAV operates out of Birmingham,

---

[1]  In deciding ADTRAV's Motion to Compel Arbitration, the Court must "recount[] the facts in
the light most favorable to Plaintiff."  White v. Four Seasons Hotels & Resorts, 999 F. Supp. 2d
250, 254 (D.D.C. 2013) (citing Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863,
865 (D.C. Cir. 2008)).

Alabama, Goodrich worked remotely from his home in Washington, D.C.  Id. ¶ 7.  At the time of

his employment, Goodrich suffered from "bipolar 2 disorder, ADHD, anxiety disorder, and

mood disorder."  Id. ¶¶ 10–11.  His project manager allegedly subjected him to "unfair

criticisms" on account of his disability, which "hindered [his] work."  Id. ¶¶ 17–19.  On February

5, 2014, Goodrich complained to ADTRAV's Vice President of Human Resources to request

reasonable accommodation for his disability.  Id. ¶¶ 14, 19.  ADTRAV fired him five days later.

Id. ¶¶ 12–13.  On June 11, 2015, Goodrich filed a complaint in this Court, alleging that

ADTRAV terminated him in violation of the ADA.

　　　Soon after Goodrich's employment had begun, he and ADTRAV entered into a written

agreement entitled "Alternative Dispute Resolution Program."  This agreement made it a

"condition of . . . employment" that "any controversy or claim arising out of or relating to [the]

employment relationship with the Company or the termination of that relationship, must be

submitted for non-binding mediation before a third-party neutral and (if necessary) for final and

binding resolution by a private and impartial arbitrator."  Mem. Supp. Def.'s Mot. Compel

Arbitration & Stay Complaint ("Def.'s Mot."), Ex. A ("Arbitration Agreement"), at 1.

Arbitrable matters expressly included "claims for discrimination (including, but not limited to,

discrimination based on . . . mental or physical disability or medical condition . . .), harassment,

retaliation, or otherwise, arising under . . . the Americans with Disabilities Act."  Id. at 1–2.

　　　The Arbitration Agreement further provided that all required mediation and arbitration

would occur in Birmingham, Alabama, unless the parties mutually agreed on an alternative

location.  Id. at 3.  It also specified that the arbitrator would apply Alabama law, as well as any

governing federal law.  Id.  The Agreement closed with an acknowledgment that "[b]oth parties

understand that by agreeing to the terms in this Procedure, both are giving up any constitutional

or statutory right they may possess to have covered claims decided in a court of law before a judge or jury." Id. at 4.

ADTRAV answered Goodrich's complaint on September 14, 2015, raising a number of affirmative defenses.[2]  On October 7, it filed a Motion to Compel Arbitration and Stay the Complaint.  ADTRAV contends that the parties plainly entered into an agreement requiring that disputes of this very type be referred for arbitration, and that federal law requires enforcement of valid arbitration agreements.  In response, Goodrich concedes that he and ADTRAV entered into the Arbitration Agreement and that his present claim for relief under the ADA was encompassed within the Agreement.  Yet he insists that the Agreement is unenforceable as a matter of contract law.  Goodrich claims that it was executed in a procedurally unconscionable fashion, since he was given little time to read the document.  Mem. Supp. Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") 4.  He also maintains that the Agreement is substantively unconscionable, because its forum-selection clause would require him to travel hundreds of miles from where he lives and hire an attorney familiar with relevant Alabama law.  Id. at 5.

## II.    Legal Standard

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This

---

[2]  The Court finds that ADTRAV did not waive its right to move to compel arbitration merely by filing an answer.  In this context, waiver occurs when a party "act[s] 'inconsistently with the arbitration right'" through "actively participat[ing] in [a] lawsuit."  Khan v. Parsons Global Servs., Ltd., 521 F.3d 421, 425 (D.C. Cir. 2008) (quoting Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987)).  ADTRAV hardly "made a conscious decision to exploit the benefits of pretrial discovery and motion practice," Nat'l Found., 821 F.2d at 776, nor has Goodrich suffered "economic and tactical prejudice" as a result of ADTRAV's motion, Khan, 521 F.3d at 426 (citing Nat'l Found., 821 F.2d at 775–78).

law "strongly favors the enforcement of agreements to arbitrate as a means of securing 'prompt, economical and adequate solution of controversies.'" Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 479–80 (1989) (quoting Wilko v. Swan, 346 U.S. 427, 438 (1953)). Accordingly, courts must "rigorously enforce agreements to arbitrate." Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 458 (2003) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 626 (1995)). Section 4 of the FAA permits a party to petition a federal district court otherwise having subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. A court reviewing such a motion must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." Hill v. Wakenhut Servs. Int'l, 965 F. Supp. 2d 84, 90 (D.D.C. 2012) (quoting Nelson v. Insignia/Esg, Inc., 215 F. Supp. 2d 143, 146 (D.D.C. 2002)).

Yet "like other contracts," arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-a-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). "Whether an arbitration agreement is unconscionable is primarily a question of state contract law." Ruiz v. Millennium Square Residential Ass'n, Civ. No. 15-1014 (JDB), 2016 WL 158498, at *3 (D.D.C. Jan. 13, 2016). The parties agree that District of Columbia law governs whether the Arbitration Agreement is enforceable. In the District, "[a] party seeking to avoid a contract because of unconscionability must prove two elements: an absence of meaningful choice on the part of the parties together with contract terms which are unreasonably favorable to the other party." Ruiz, 2016 WL 158498, at *3 (quoting Curtis v. Gordon, 980 A.2d 1238, 1244 (D.C. 2009)). These two elements are known as procedural and substantive unconscionability. See also Fox v. Computer World Servs. Corp., 920 F. Supp. 2d 90, 97

4

(D.D.C. 2013) ("Under D.C. law, a court can void a contract on the grounds that it is

unconscionable if the party seeking to avoid the contract proves that the contract was both

procedurally and substantively unconscionable."). "The court determines unconscionability as a

matter of law." Curtis, 980 A.2d at 1244 (quoting Urban Invs., Inc. v. Branham, 464 A.3d 93, 99

(D.C. 1983)).

### III.    Analysis

####     A.    Substantive Unconscionability

Goodrich argues that the Arbitration Agreement is substantively unconscionable because

it would force him both "to travel hundreds of miles away from his home and where he actually

did his work duties" and "to hire an attorney familiar with Alabama law." Pl.'s Opp'n 5. The

Court disagrees that these logistical difficulties justify voiding the parties' agreement. A contract

may be found substantively unconscionable only if its "'terms are unreasonably favorable to one

party' such that they are 'so outrageously unfair as to shock the judicial conscience.'" Song fi,

Inc. v. Google Inc., 72 F. Supp. 3d 53, 62 (D.D.C. 2014) (quoting Fox, 920 F. Supp. 2d at 99).

The Supreme Court has recently observed that contracting parties are "generally free to

structure their arbitration agreements as they see fit." Stolt-Nielsen S.A. v. AnimalFeeds Int'l

Corp., 559 U.S. 662, 683 (2010) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514

U.S. 52, 57 (1995)). Unsurprisingly, then, the FAA allows parties "considerable latitude to

choose what law governs some or all of [an arbitration contract's] provisions." DIRECTV, Inc.

v. Imburgia, 136 S. Ct. 463, 468 (2015). So to the extent that a party may effectively be required

to retain local counsel for arbitration proceedings, federal law tolerates such hardship as an

incident of enforcing private arbitration agreements.

And even if traveling to Alabama would impose a "substantial financial burden" on

Goodrich, that result—though unfortunate—would not be "so outrageously unfair as to shock the

judicial conscience." Song fi, 72 F. Supp. 3d at 62.  In the modern globalized economy, parties to arbitration agreements rarely reside in the same locality.  Accordingly, it is "no[t] uncommon for a contracting party to bargain for the 'home field' as the sole forum for contractual disputes, even when such designation may put the other party at a geographical disadvantage in litigating such a dispute." Id. at 63 (quoting Nat'l Dev. Corp. v. Fenetres MQ, Inc., No. Civ. 98–618 (TFH), 1998 WL 34313581, at *3 (D.D.C. June 26, 1998)).  Nor is Birmingham, Alabama "some arbitrary location chosen to restrict [potential plaintiffs'] access to litigation, but is the jurisdiction where the contracting defendant is located." Id.  Goodrich has therefore failed to show that arbitrating in the contractual forum would be "so gravely difficult and inconvenient that he [would] for all practical purposes be deprived of his day in court." Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 154 (D.D.C. 2008) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)).  The Arbitration Agreement was therefore not substantively unconscionable.  Since D.C. law generally requires both procedural and substantive unconscionability for a contract to be voided on these grounds, the Court will grant ADTRAV's motion.

### B.   Procedural Unconscionability

As Goodrich points out, the D.C. Court of Appeals has occasionally suggested that "in an egregious situation"—one presumably exceeding "ordinary" unconscionability—"one or the other [types of unconscionability] may suffice." Branham, 464 A.2d at 99 (quoting Bennett v. Fun & Fitness of Silver Hill, Inc., 434 A.2d 476, 480 n.4 (D.C. 1981)).  "[T]here do not appear to be any reported D.C. cases finding such an 'egregious' scenario." Ruiz, 2016 WL 158498, at *3. The facts of this case—even viewed in the light most favorable to Goodrich—do not warrant such an extraordinary holding.

Goodrich contends that the Arbitration Agreement was procedurally unconscionable because he was given virtually no opportunity to read it.  In an attached affidavit, Goodrich explains that he met with an ADTRAV human-resources assistant named Amanda McCown as part of his training.  Ms. McCown handed him "a stack of documents that [he] was told were required to be initialed and signed."  Pl.'s Opp'n, Ex. 1, ¶ 5.  Of these documents, the only ones that were explained to him pertained to health insurance and the company's direct-deposit payment system.  Id.  Ms. McCown allegedly told Goodrich that the other papers were "just long legal document[s] explaining that as a virtual agent [he] agreed to abide by the customary policies of the company, including no drinking of alcohol or consuming illegal drugs while at work."  Id. ¶ 6.  Goodrich claims that he "was not given any time to read any of these documents or ask questions about them" because he was instructed to "get back to [his] training so that [he] would not miss any crucial material."  Id. ¶ 7.  As a result, he "do[es] not remember ever signing away any of [his] rights to pursue a civil action in a court of law."  Id. ¶ 8.

A contract is procedurally unconscionable where, under all the circumstances, "a party lacked meaningful choice as to whether to enter the agreement."  Fox, 920 F. Supp. 2d at 90. The Court finds it significant that Goodrich initialed every page of the four-page Arbitration Agreement; that the agreement was titled "Alternative Dispute Resolution Program," in bold font; that its headings and subheadings included such straightforward phrases as "The Mediation and Arbitration Procedure," "Nonbinding Mediation," and "Binding Arbitration"; and that immediately above its signature lines, the Agreement again clarified that "by agreeing to the terms in this Procedure, both [parties] are giving up any constitutional or statutory right they may possess to have covered claims decided in a court of law before a judge or jury."  Arbitration Agreement 1–4; see also White v. Four Seasons Hotels & Resorts, 999 F. Supp. 2d 250, 258–59 (D.D.C. 2013) (citing an arbitration agreement's short and descriptive headings, its repetitive

waivers, and the plaintiff's initials and signature as evidence that she "was made aware of and agreed to the plain terms of the agreement to arbitrate"); <u>Fox</u>, 920 F. Supp. 2d at 98 ("[T]he Agreement was not 'hidden in a maze of fine print' but was presented as [a] separate document with the title 'AGREEMENT TO ARBITRATE' in all capital letters and in bold font." (quoting <u>Williams v. Walker-Thomas Furniture Co.</u>, 350 F.2d 445, 449 (D.C. Cir. 1965))).

Even if Goodrich was pressured to complete all remaining paperwork quickly so that he could return to his training, the Arbitration Agreement's title and headings would have alerted even the most hurried reader to the nature of its contents.  And after he was put on notice, it was his "responsibility to 'think the matter through' before signing the contract."  <u>White</u>, 999 F. Supp. 2d at 259 (quoting <u>Nur v. KFC, USA, Inc.</u>, 142 F. Supp. 2d 48, 51 (D.D.C. 2001)).  This is not a singularly "egregious" process failure justifying the Court's invalidation of an arbitration agreement in the absence of substantive unconscionability.

For the foregoing reasons, it is hereby

**ORDERED** that [38] Defendant's Motion to Compel Arbitration and Stay the Complaint be **GRANTED**.  It is further

**ORDERED** that all proceedings in this case be **STAYED** pending the conclusion of the arbitration.[3]  And it is further

**ORDERED** that the parties jointly file a status report upon the conclusion of the arbitration proceedings or by June 1, 2016, whichever occurs first.

---

[3]  The circuits are split as to whether district courts must stay proceedings after all claims have been referred to arbitration and a stay has been requested, or whether they retain the discretion to dismiss such cases outright.  <u>See Katz v. Cellco Partnership</u>, 794 F.3d 341, 345 (2d Cir. 2015) (summarizing this inter-circuit disagreement).  The D.C. Circuit appears not to have ruled on this issue, but the Second Circuit recently held that Section 3 of the FAA requires courts to stay proceedings under these circumstances.  <u>Id.</u> at 347.  The Court will stay this case, as requested by ADTRAV, in line with recent practice from this District.  <u>See Ruiz</u>, 2016 WL 158498 at *6; <u>White</u>, 999 F. Supp. 2d at 263.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:     February 1, 2016